United States Court of Appeals,

Eleventh Circuit.

No. 96-6171.

Ken DUCKETT, Plaintiff-Appellant,

v.

DUNLOP TIRE CORPORATION, Defendant-Appellee.

Sept. 3, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. 95-N-782-NE), Edwin L. Nelson, Judge.

Before EDMONDSON, Circuit Judge, and KRAVITCH and HENDERSON, Senior Circuit Judges.

PER CURIAM:

Plaintiff appeals the grant of summary judgment of his Americans with Disabilities Act ("ADA") claim. The district court held that Plaintiff failed to establish that he is an "otherwise qualified individual" within the meaning of the ADA: he was employed by Defendant as a supervisor and was no longer able to supervise. Plaintiff says that he was an otherwise qualified individual because he was qualified to perform other work for Defendant, and his employer was under an obligation to transfer him to another position for which he was qualified. Because we affirm the district court's judgment on other grounds, we decline to rule on this issue. We hold that Plaintiff has failed to present evidence sufficient to establish that Defendant discriminated against him by failing to provide a reasonable accommodation.

I.

In 1976, Plaintiff Ken Duckett began working for Defendant Dunlop Tire Corporation as a forklift operator. Approximately eight or nine months later, Defendant promoted Plaintiff to a supervisory position; and he continued to work in a supervisory position until he was terminated on March 31, 1994. In January 1993, Plaintiff was promoted to Section Manager. As such, he worked a twelve-hour shift on a rotating schedule; and supervised twelve to thirteen bargaining unit employees.

Plaintiff has experienced high blood pressure since 1983. In May 1993, Plaintiff's blood pressure became dangerously elevated; and he was sent home from work. In June 1993, Plaintiff's doctor hospitalized him for his blood pressure. He also recommended that Plaintiff be excused from work for three months to gain control of his high blood pressure. Though Plaintiff successfully completed a cardiac rehabilitation program, his blood pressure readings remained consistently above the normal range.

In May 1993, Defendant placed Plaintiff on its Salary Continuation Program, which provided for maximum benefits for a period of up to 24 weeks and lesser benefits for a period of up to 28 weeks. The program required that Plaintiff maintain contact with Defendant and inform it of his medical condition, treatment and prognosis. During one of these contacts, Plaintiff suggested that he would not be able to return to work as a Section Manager, but could return in some other capacity in the bargaining unit.

In November 1993, Plaintiff's maximum benefits expired. In February 1994, Defendant submitted a long-term disability application with its insurer on Plaintiff's behalf. Upon receiving a copy of Plaintiff's long term disability application, Defendant's Medical Director, Dr. Jan Davis, recommended that he be evaluated by a cardiologist. Pursuant to this recommendation, Defendant asked Plaintiff to visit Dr. William Cox. Plaintiff was examined by Dr. Cox, who issued a letter indicating that Plaintiff has elevated blood pressure which might be controlled or managed by a change in medical regimen.

Shortly thereafter, a representative of Defendant contacted Plaintiff and requested that he come in to meet with various people. Plaintiff was still receiving minimum benefits under Defendant's Salary Continuation Program at the time. At the meeting, Defendant's personnel manager informed Plaintiff that the manager had two medical opinions indicating that Plaintiff could return to his job as Section Manager and that the position was available. Plaintiff stated that his doctor had not released him to work and, accordingly, that he would not be able to return to work as a Section Manager. When Plaintiff refused to resign, Defendant terminated his employment.

Plaintiff filed the present action alleging a single claim under the ADA. The district court granted Defendant summary judgment, holding that Plaintiff failed to show that he is a qualified individual as Defendant "requires that its supervisors be able to supervise, and the court cannot imagine a duty more essential for the position." (Order, p. 8) (citing 29 C.F.R. § 1630.2(n)(2)(i) ("The function may be essential because the reason the position exists is to perform that function."))

II.

We review the grant of summary judgment *de novo* to determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Wallace Community College,* 49 F.3d 1517, 1520 (11th Cir.1995). To establish a prima facie case of disability discrimination under the ADA, a plaintiff must establish that (1) he has a disability, (2) he is a qualified individual and (3) he was subjected to unlawful discrimination because of his disability. *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996).

The ADA defines "discrimination" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, ..." 42 U.S.C. § 12112(b)(5)(A). According to Plaintiff, he was "otherwise qualified" to work for Defendant in a non-supervisory position, and Defendant was required to accommodate him by either transferring him to such a position or allowing him to continue to remain on medical leave under Defendant's Salary Continuation Plan.

A. *Transfer*

The pertinent regulations about whether an employer is required, as a reasonable accommodation, to reassign a disabled employee to a substantially different position provide that "[r]easonable accommodation may include but is not limited to: ... (ii) ... reassignment to a vacant position." 29 C.F.R. § 1630.2(*o*)(2). This regulation was interpreted in *Willis v. Conopco,* 108 F.3d 282, 284 (11th Cir.1997), to mean that "[r]eassignment to another position is a required accommodation *only* if there is a vacant position available for which the employee is otherwise qualified." Also, the regulations contemplate that the issue of whether an employee is an otherwise

qualified individual and whether a reasonable accommodation can be made for that employee is determined by reference to a specific position. *See* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of *the employment position* such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of *such position.*") (emphasis added).

We need not decide whether, and under what circumstances, the ADA requires reassignment to a substantially different position as a reasonable accommodation; nor do we need to decide whether "otherwise qualified individual" is defined as broadly as Plaintiff says it is. It is clear in this case that transferring Plaintiff would not have been a reasonable accommodation.

We are aware of no case under either the ADA or the Rehabilitation Act[1] where an employer has been required to transfer an employee to another position where the employer (independent of concerns about disability) has a business policy against the pertinent kind of transfer. That Defendant has a policy against "rolling back" salaried employees into production positions within the bargaining unit is undisputed. It is also undisputed that the only salaried jobs available on the date of Plaintiff's termination were both supervisory positions.

As Plaintiff notes, Defendant, at times, would promote employees from production positions to salaried positions, but then allow the employee to return to his previous job in the bargaining unit when things did not work out as planned. In the few instances where this event has occurred, however, the employee was rolled back into the bargaining unit within a matter of months after the initial promotion to a salaried position: basically, an employment experiment that failed. Plaintiff, on the other hand, was employed as a supervisor for almost all of his 18 years with Defendant.

Also, the evidence indicates that the bargaining unit to which Plaintiff requested reassignment is covered by a collective bargaining agreement which prohibits anyone from outside

---

[1]"[C]ourts have universally looked to Rehabilitation Act cases as a source of guidance when construing the ADA." *McKay v. Toyota Motor Mfg. U.S.A. Inc.,* 110 F.3d 369, 373 n. 1 (6th Cir.1997) (citation omitted).

4

the union from holding production jobs. *See Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995) ("Farmland Foods had no obligation to terminate other employees or violate a collective bargaining agreement in order to accommodate Wooten....") Moreover, according to Plaintiff and his physician, he was unable to return to work in any capacity when he was terminated and required an indefinite medical leave. (Appellant's Brief, p. 31) ("[Plaintiff] had not even been released ... to work at the time he was terminated.") As he concedes, at the time of his termination, Plaintiff was not "otherwise qualified" for *any* position with Defendant.

B. *Salary Continuation Program*

While Plaintiff admits he was unable to return to work when Defendant terminated his employment, Plaintiff says that, as a reasonable accommodation, Defendant was required to allow Plaintiff to exhaust the remaining two months of benefits under its Salary Continuation Program. In support of this argument, Plaintiff points to the Appendix to C.F.R. § 1630.2(*o*) ("other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment").

That Defendant, as a matter of business policy, chose to create its Salary Continuation Plan does not establish that it was required to allow Plaintiff to receive benefits under the plan—for an entire year—as a reasonable accommodation under the ADA. *See, e.g., Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995) ("[The employee's] reliance on the [employer's] [p]ersonnel [r]ules as proof of the alleged failure to provide reasonable accommodation is misplaced. A particular accommodation is not necessarily reasonable, and thus federally mandated, simply because the [employer] elects to establish it as a matter of policy.")

Assuming that the regulations contemplate that an employee be allowed benefits of the kind in Defendants' Salary Continuation Plan, Plaintiff acknowledges that his need for leave would have been for an indefinite period—not just a month or two. Put differently, Plaintiff could not represent that he likely would have been able to work within a month or two. Plaintiff had already been on medical leave for ten months, had only two months of eligibility for the Salary Continuation Plan

remaining, and had no way of knowing when his doctor would allow him to return to work in any capacity.

In an analogous situation, the Fourth Circuit held that an employer did not violate the ADA by "refusing to grant [an employee] a period of time in which to cure his disabilities" where the employee "sets no temporal limit on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions." *Id.* at 282. In so holding, the *Myers* court said these words:

> Significantly, these provisions [42 U.S.C. § 12111(8); 45 C.F.R. § 1232.3(i) ] contain no reference to a person's *future* ability to perform the essential functions of his position. To the contrary, they are formulated entirely in the present tense, framing the precise issue as to whether an individual "can" (not "will be able to") perform the job with reasonable accommodations. Nothing in the text of the reasonable accommodation provision requires an employer to wait for an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which, presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.

*Id.* at 283. In a similar way, Plaintiff's request that his employer accommodate any disability Plaintiff had by providing him with two more months leave when he could not show he would likely be then able to labor is not "reasonable" within the meaning of the ADA: the course of Plaintiff's health was too uncertain.[2]

AFFIRMED.

---

[2]We note, however, that more compelling facts might lead to a different result. For example, ADA regulations may possibly be violated if an employee was terminated immediately upon becoming disabled without a chance to use his leave to recover. In this case, Plaintiff had already used 10 months of medical leave.