**Mark WOOD, Plaintiff–Appellee,**

v.

**Charlie GREEN, Clerk of Circuit Court for Lee County, Florida, Defendant–Appellant.**

**No. 02–12971.**

United States Court of Appeals, Eleventh Circuit.

March 13, 2003.

---

Hala A. Sandrige, Fowler, White, Gillen, Boggs, Villareal & Banker PA, Tampa, FL, for Defendant–Appellant.

James E. Aker, Icard, Merrill, Cullis, Timm, Furen & Ginsburg, Sarasota, FL, for Plaintiff–Appellee.

Before DUBINA, HILL and COX, Circuit Judges.

DUBINA, Circuit Judge:

This case involves an appeal from the district court's order denying appellant Charlie Green's ("Green's") motion for judgment as a matter of law. For the reasons that follow, we reverse and render.

## I. BACKGROUND

### A. Facts

Appellee Mark Wood ("Wood") began working for the Clerk's Office of the Circuit Court for Lee County, Florida, in 1974. In 1978, Wood began suffering from cluster headaches. By 1985, Wood's cluster headaches caused him to miss lengthy periods of work and prevented him from accomplishing a substantial portion of his duties. To accommodate Wood's extended absences resulting from the cluster headaches, the Clerk's Office created the new position of Court Coordinator for Wood. Wood's primary duty in his new position was to review new legislation and rules that affected the courts and to establish procedures accordingly. This duty occupied approximately 50% of his time. The remaining 50% of his time was spent working with the supervisors of the court, acting as a sounding board, monitoring court related financial accounts, representing the office on boards and committees, speaking at conferences, handling difficult customers, and disseminating information to the public. When Wood was absent, other people had to do his work, sometimes including the review and analysis of new legislation. Notwithstanding his health

problems, however, Wood received favorable yearly evaluations.

Throughout the years, Green, who was Clerk of the Circuit Court for Lee County, Florida, routinely granted Wood discretionary leave when he had exhausted his medical, sick, and vacation leave. In 1995, Wood missed a total of seven weeks of work. He missed significant amounts of work in both 1996 and 1997 as well. In 1998, Wood missed a total of approximately 15 weeks of work due to his cluster headaches. In 1999, Wood's cluster headaches caused him to miss considerable portions of work in January, February, March, July, and August. In the fall of 1999, Wood met with his direct supervisor, Ed Flannery ("Flannery"), for his annual evaluation. Flannery informed Wood that he would not receive the customary annual pay increase due to his absences from work. Flannery also told Wood that Wood might have to submit weekly doctor's notes if Wood missed additional work.

Shortly thereafter, Wood began experiencing another cluster headache. He requested a discretionary leave of absence without pay until he could return to work. Green approved this leave effective December 2, 1999, with no termination date. Wood subsequently telephoned Green to check in and tell him that he was still suffering from a cluster headache. Green told him not to worry about his job and to take care of himself. Additionally, Green told Wood to provide him with a doctor's letter as soon as he could. Wood's doctor sent a letter to Green in late December 1999. On January 5, 2000, Green terminated Wood's employment.

### B. Procedural History

Wood brought an Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et. seq.*, ("ADA") and a Family Medical Leave Act ("FMLA") action against Green. After an

eight-day jury trial, the jury returned a verdict in favor of Wood on his ADA discrimination claim and in favor of Green on the FMLA claim. On the ADA claim, the jury awarded Wood back pay. The district court also ordered reinstatement, but stayed such reinstatement pending appeal. Green filed a motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. The district court denied Green's Rule 50(b) motion, finding that Wood's requested accommodation for discretionary leave was not unreasonable because it was not for indefinite leave. Rather, Wood's fourteen-year history with cluster headaches, which indicated that he would be able to return to work in a month or two, circumscribed Wood's request. In considering the testimony in the light most favorable to Wood, the district court also found that sufficient evidence existed to support the jury's finding that a reasonable accommodation would have enabled Wood to perform the essential functions of his job.

Green then perfected this appeal.

## II. ISSUES

1. Whether Wood's requested accommodation of indefinite leaves of absence is reasonable.

2. Whether sufficient evidence of discrimination on the basis of Wood's disability existed.

3. Whether the jury's verdict is against the manifest weight of the evidence.

4. Whether attendance is an essential function of Wood's job so that his requested accommodation is unreasonable.

## III. STANDARD OF REVIEW

■ "We review a district court's denial of a motion for judgment as a matter of law *de novo*, applying the same standards as the district court." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999). Under Rule 50, a party is entitled to judgment as a matter of law "if during a trial by jury the opposing party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the opposing party on that issue." *United States Steel, L.L.C. v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir.2001) (internal quotations omitted).

## IV. ANALYSIS

*Indefinite Leave as a Reasonable Accommodation*

■ Green argues that Wood was not a qualified individual within the meaning of the ADA because Wood's requested accommodation of indefinite leaves of absence was not reasonable. We agree.

■■ The ADA provides that employers shall not discriminate against qualified individuals with a disability because of the disability. 42 U.S.C. § 12112(a). "In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) he is disabled; (2) he was a 'qualified individual' at the relevant time . . .; and (3) he was discriminated against because of his disability." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir.2001). To be a "qualified individual" under the ADA, a person must be able to perform the essential functions of his or her job with or without a reasonable accommodation. *Id.* Wood argues that, given the unique nature of his job, a reasonable jury could find that he was a qualified individual within the meaning of the ADA because his request for leaves of absence was a reasonable accommodation.

■ Green relies on *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222 (11th Cir.1997) (per curiam), in arguing that Wood's request for indefinite leaves of absence is an unreasonable accommodation. In *Duckett*, we held that an employer was not required

to allow an employee to stay on medical leave under a salary continuation program. 120 F.3d at 1225. The court noted that the employee's

need for leave would have been for an indefinite period—not just a month or two. Put differently, [p]laintiff could not represent that he likely would have been able to work within a month or two ... and had no way of knowing when his doctor would allow him to return to work in any capacity.

*Id.* at 1226. The court further explained that an employer did not violate the ADA by "refusing to grant [an employee] a period of time in which to cure his disabilities where the employee sets no temporal limit on the advocated grace period, urging only that he deserves sufficient time to ameliorate his conditions." *Id.* (citation and internal quotation marks omitted).

Significantly, these provisions [42 U.S.C. § 12111(8); 45 C.F.R. § 1232.3(i)] contain no reference to a person's *future* ability to perform the essential functions of his position. To the contrary, they are formulated entirely in the present tense, framing the precise issue as to whether an individual "can" (not "will be able to") perform the job with reasonable accommodations. Nothing in the text of the reasonable accommodation provision requires an employer to wait for an indefinite period for an accommodation to achieve its intended effect. Rather, reasonable accommodation is by its terms most logically construed as that which, presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.

*Id.* at 1226 (quoting *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995)).

In denying Green's Rule 50(b) motion, the district court attempted to distinguish *Duckett.* The district court found that even though, due to the nature of cluster headaches, Wood could not give a date certain when he would be able to return to work, the outer limits of Wood's absences could reasonably be approximated due to his fourteen-year experience with cluster headaches. The district court found that because Wood's longest absence ever was three months and Wood undisputedly returned to work immediately after each cluster headache subsided, his request for a reasonable accommodation was not for indefinite discretionary leave; rather, Wood's past experience circumscribed his request, and that past experience indicated that Wood would be able to return to work within a month or two. Wood urges us on appeal to adopt the district court's reasoning. Wood also argues that *Duckett* actually supports his contention that a leave of absence is a reasonable accommodation because Wood would return to work within a month or two, unlike the plaintiff in *Duckett.*

Wood contends that a leave of absence can be a reasonable accommodation, citing *Garcia–Ayala v. Lederle Parenterals, Inc.,* 212 F.3d 638, 648 (1st Cir.2000), which explained that

[s]ome employees, by the nature of their disability, are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite. Each case must be scrutinized on its own facts. An unvarying requirement for definiteness again departs from the need for individual factual evaluation.

212 F.3d at 648; *see also Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 878 (9th Cir.1989) (holding that leaves of absence for cluster headaches were a reasonable accommodation where no evidence existed as to how the leave of absence would impose an undue hardship on the employer). However, in reaching its conclusion, the

First Circuit rejected the findings of the district court, which relied on *Myers v. Hose*, 50 F.3d 278 (4th Cir.1995). *Myers* held that "reasonable accommodation does not require the County to wait indefinitely for Myers' medical conditions to be corrected, especially in light of the uncertainty of cure." 50 F.3d at 283. We adopted the *Myers* rationale in *Duckett*. 120 F.3d at 1225–26. In addition, unlike Wood, the plaintiff in *Garcia–Ayala* had requested leave to a specific date.

▪ While a leave of absence might be a reasonable accommodation in some cases, Wood was requesting an indefinite leave of absence. Wood might return to work within a month or two, or he could be stricken with another cluster headache soon after his return and require another indefinite leave of absence. Wood was not requesting an accommodation that allowed him to continue work in the present, but rather, in the future—at some indefinite time. The *Duckett* court parenthetically noted that more compelling facts might lead to a different result. *Id.* at 1226 n. 2. For example, the ADA might be violated "if an employee was terminated immediately upon becoming disabled without a chance to use his leave to recover." *Id.* Wood was not terminated immediately upon becoming disabled. He had been granted years of discretionary leave and had been on a discretionary leave for over one month at the time of his termination. While *Duckett* dealt with indefinite leave, the holding of that case is that an accommodation is unreasonable if it does not allow someone to perform his or her job duties in the present or in the immediate future.

Green created Wood's new position to accommodate Wood's absences from work. In addition, Green previously granted Wood indefinite leaves of absence to deal with his cluster headaches. However, prior accommodations do not make an accom-modation reasonable. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir.1997). Furthermore, Wood's absenteeism had been increasing before his termination. Wood was requesting an accommodation of indefinite leaves of absence so that he could work at some uncertain point in the future. Wood's requested accommodation was not reasonable. *See Duckett*, 120 F.3d at 1226. The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future. *Id.* As a result, we conclude from the record that Wood was not a qualified individual under the ADA. Therefore, the district court erred in denying Green's motion for judgment as a matter of law. Because of our disposition of the first issue presented in this appeal, we need not reach the remaining issues.

Based on our foregoing discussion, we reverse the district court's order denying Green's motion for judgment as a matter of law and render judgment in favor of Green.

REVERSED and RENDERED.