[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12261
Non-Argument Calendar
_____

D.C. Docket No. 4:13-cv-00196-WS-CAS

LISA SPEARS,

Plaintiff-Appellant,

versus

CHARLIE CREEL,
in his Official Capacity as Sheriff of Wakulla County Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 15, 2015)

Before ROSENBAUM, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Lisa Spears appeals the district court's grant of summary judgment in favor of Charlie Creel in his official capacity as Sheriff of Wakulla County, Florida (the "Sheriff"), on her claims of disability discrimination in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112; the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Florida Civil Rights Act, Fla. Stat. § 760.10.[1] Among others things, Spears alleged in her complaint that the Sheriff failed to accommodate her disabling medical condition.  The district court concluded that Spears's disability claim failed because she had not identified a reasonable accommodation that would allow her to perform the essential functions of an available position with the Sheriff.  On appeal, Spears argues that her requested accommodations were reasonable and that the district court erred by failing to conclude that the Sheriff was required to engage in "an interactive accommodation process."  After careful review, we affirm.

## I.

In September 2004, Spears was hired to work at the Wakulla County Jail in the medical unit.  She became certified as a corrections officer in 2008, was

---

[1] Generally, claims brought under the Rehabilitation Act and the Florida Civil Rights Act ("FCRA") are analyzed under the same framework as claims under the ADA.  *See Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263-64 (11th Cir. 2007) (FCRA); *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (Rehabilitation Act).  Therefore, we address these claims collectively under the ADA.

promoted to sergeant in 2010, and, about a year later, was again promoted to lieutenant. As a lieutenant, Spears supervised approximately nine officers in the medical unit. She primarily worked from 8 a.m. to 5 p.m.

In November 2011, Spears was diagnosed with pre-cancer. She had her first surgery in January 2012, and, shortly thereafter, was diagnosed with cancer. She had her second surgery on March 8, 2012.

On March 16, 2012, Spears received notice from the Sheriff that all of the medical jobs at the jail were being terminated and that a private health-care provider was taking over the medical care of inmates. The notice stated that Spears's effective termination date was April 9, 2012, and that her termination was not performance related. Spears did not apply for a position with the private provider because she did not meet the minimum education requirements.

Three days after receiving her termination letter, Spears made a written request for a transfer to the corrections department at the jail. The corrections department was a separate unit from the medical unit. At the time that she made the request, Spears believed that two lieutenant positions were open because only two lieutenants were then on staff, instead of the usual four. On March 28, the Sheriff responded that no lieutenant positions with the corrections department were vacant. However, the Sheriff stated that a "Shift Detention Deputy" position was

3

available and directed Spears to respond by April 4 if she wished to accept the position.

On April 3, Spears made another written request for reassignment and informed the Sheriff for the first time that she had cancer and was undergoing cancer treatment. Spears again requested transfer to a vacant lieutenant position.

On April 4, Karen Day, the Human Resources Director for the Sheriff's Office, responded and again informed Spears that the detention deputy position was available. Day stated that, due to the medical issues identified by Spears in her April 3 memorandum, Spears would need her doctor to review the detention deputy's job description and certify that she could perform the job's duties. Day directed Spears to respond by April 13 to be considered for reassignment.

On April 12 or 13, Spears obtained and submitted doctors' notes indicating that she could return to work and could carry out all the duties of a detention deputy. Upon receipt of these notes, Spears was reassigned to the detention deputy position with a start date of April 27. However, in her deposition, Spears testified that she never accepted the detention deputy position because it represented a significant pay cut and a demotion, and it would not have allowed her to receive her medical treatment.

Spears began receiving radiation treatment for the cancer on April 19. From April 19 to June 7, Spears underwent daily radiation treatments.

4

On April 26, Spears, via written memorandum to the Sheriff, stated that she could not start work the following day because the position would be adverse to her health. Spears also met with Day to discuss these issues. In the memorandum, Spears again requested assignment to an open lieutenant position where she could work "roughly the 8 to 5 shift" and be able to "take intermittent leave." Spears further explained that working a full shift would be hard for her and that she would prefer a position in which she could intermittently take leave under the Family and Medical Leave Act ("FMLA") so that she did not use up all of her leave during her cancer treatment. Spears stated that she would need to take FMLA leave until the "issue" was resolved. In a letter response dated April 30, Day again stated that no lieutenant positions were vacant and that the only position available was for a detention deputy.

At her deposition, Spears explained that she had never accepted the detention deputy position and could not physically perform that position's duties because of her radiation treatments. As a result of the treatments, Spears felt physically weak, nauseated, and fatigued. Once her radiation treatments began, Spears took FMLA leave and exhausted her twelve weeks of that leave on July 12.

Before her FMLA leave was exhausted, Day informed Spears in a letter dated June 26 that she would need to have her doctor complete a fitness-for-duty review before she could return to work as a detention deputy. The letter stated that

5

Spears's FMLA leave was to expire on July 12, that she was to return to work on July 13, and that she needed to submit the certification by July 6. Spears's doctor completed the certification, indicating that Spears could not perform the essential job functions of a detention deputy relating to the use of force, but noting that she was better suited for a supervisory position. Spears's physician also stated that Spears would be able to return to full-duty work in October 2012.

Thereafter, Day informed Spears that, because Spears was unable to perform the essential job functions of her position as a detention deputy, her employment would be terminated effective July 13, 2012. Spears did not reapply for employment with the Sheriff's Office.

## II.

Spears filed her complaint in the United States District Court for the Northern District of Florida. In her complaint, she alleged claims of gender discrimination and retaliation under Title VII, disability discrimination under the ADA and related statutes, and violations of the FMLA. Only the ADA claim is at issue in this appeal.[2]

After discovery, the Sheriff moved for summary judgment. In broad terms, the Sheriff argued that Spears had not identified a reasonable accommodation that would allow her to perform the essential functions of a detention deputy.

---

[2] Spears abandoned her Title VII claims at summary judgment, and she has not appealed the grant of summary judgment on her FMLA claims.

According to the Sheriff, there were no open lieutenant positions when Spears requested a transfer, and Spears's request to work in a "light duty position" when she was physically able was not a reasonable accommodation because regular attendance is an essential job function, and, furthermore, creation of such a position would have created undue hardship for the Sheriff as a result of the uncertainty of Spears's schedule.

Among other evidentiary materials submitted in support of summary judgment, the Sheriff included an affidavit from Human Resources Director Day, stating that, even if a sergeant or lieutenant position had been available, Spears would not have been able to perform the job's essential functions related to the use of force, which were similar to those for a detention deputy.

The Sheriff also included an affidavit from Major Jared Miller, who was responsible for the administration of the jail. The affidavit provided as follows: corrections officers worked in four rotating shifts of twelve hours, beginning either at 5 a.m. or 5 p.m. The shifts were supervised by two lieutenants. One other lieutenant position was primarily administrative in nature. Although previously four lieutenants had supervised the four shifts, the number of supervisory positions had been reduced because of budget cuts. In his deposition, Miller explained that "non-shift" work was generally administrative in nature, and the hours were usually from 7 or 8 a.m. to 4 or 5 p.m.

7

Miller's affidavit further provided that, when detention officers requested light duty, they worked their assigned shift hours in the control room, where they were responsible for monitoring inmate activity, updating inmate reports and logs, and opening and closing jail doors. Miller was unaware of any officer who had worked "part-time light duty in the control room on an ad hoc basis." The creation of a light-duty position that would permit an employee to work when he or she was physically able would be unmanageable, according to Miller, because it would lead to "havoc with staffing" by creating uncertainty in the schedule, causing other officers to be held over from previous shifts or called in to work on their days off, and increasing the amount of overtime paid out.

Spears responded in opposition to summary judgment. She contended that she was able to perform the core duties of a correctional officer if the duties involving physical inmate control and the hourly requirements of shift work were removed. She also argued that she could have temporarily worked in the control room or in a "non-shift" position until she was cleared to work full time and that this was what many employees with medical conditions did, including one corrections officer who was pregnant. Moreover, Spears asserted that she could have "utilized paid leave time donated to her by other employees until she was released back to her full duties." The Sheriff, Spears stated, did not offer her this option.

8

The district court granted the Sheriff's motion for summary judgment. The court concluded that Spears did not establish that she was qualified for a corrections position because she had not identified a reasonable accommodation that would have allowed her to perform the essential functions of such a position. Spears now appeals

## III.

We review a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*). A court shall grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we view all evidence and draw all reasonable inferences in favor of the party opposing summary judgment. *Chapman*, 229 F.3d at 1023.

## IV.

Spears argues that the district court erred by failing to conclude that the Sheriff was required to engage in "an interactive accommodation process." According to Spears, because she proposed facially reasonable accommodations that the Sheriff rejected, the Sheriff was obligated to engage in an interactive process to determine whether a reasonable accommodation existed that could be

9

made.    The Sheriff's failure to do so, Spears asserts, could be grounds for determining that her rights under the ADA were violated.

The ADA prohibits employers from discriminating against "qualified individual[s] on the basis of disability."    42 U.S.C. § 12112(a).    Generally, to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that: (1) she is disabled; (2) she was a qualified individual at the relevant time; and (3) she was discriminated against because of her disability. *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003).    A "qualified individual" is a person who, with or without reasonable accommodations, is able to perform the essential functions of a job she holds or desires.    42 U.S.C. § 12111(8).

It is unlawful for an employer to fail to provide "reasonable accommodations" for a qualified individual's disability, unless doing so would impose undue hardship on the employer.    *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).    An accommodation is "reasonable" only if it allows the employee to perform the job's essential functions.    *Id.*    The ADA provides that the term "reasonable accommodation" may include, among other things, "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position."    42 U.S.C. § 12111(9)(B).    The regulations governing the ADA explain that an employer may need "to initiate an informal, interactive process with the individual with a disability in need of an accommodation" to identify the person's

10

limitations and potential reasonable accommodations that could overcome those limitations.  29 C.F.R. § 1630.2(o)(ii)(3).

The employee bears the burden of identifying an accommodation that would allow her to perform the essential functions of her job.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).   Where the employee fails to identify a reasonable accommodation, the employer has no affirmative duty to engage in an "interactive process" or to show undue hardship.  *Id.*  We have likewise held that "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

In this case, Spears identified the following two potential accommodations that the Sheriff could have offered:  (1) transfer to a non-shift, light duty, or part-time position until she was able to return to full-time work; and (2) an extension of her leave by using donated leave from other employees.

With regard to the first accommodation, undisputed record evidence shows that no vacant position was available as a lieutenant or supervisor when Spears requested a transfer or before she was terminated.  Spears may have believed that such a position existed at the time, but she has offered no supporting evidence. Although transfer to a vacant position may be a reasonable accommodation in certain circumstances, the employer does not need "to bump another employee

from a position in order to accommodate a disabled employee." *Lucas*, 257 F.3d at 1256.  Therefore, the Sheriff was not required to transfer Spears to a position for which there was no vacancy or to create a new position for her.

In addition, we agree with the district court that no factual issue exists as to whether it would have been reasonable for the Sheriff to accommodate Spears by altering the detention deputy position to make it light duty and part-time or non-shift until she was cleared to return to full-duty work.  We have held that the ADA does not require an employer to reallocate job duties in order to change the essential functions of a job.  *Lucas*, 257 F.3d at 1260; *Earl*, 207 F.3d at 1367.  Thus, the reasonableness of Spears's request for a non-shift, light-duty assignment depends on the essential functions of the job.

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  Whether a function is "essential" is a case-by-case determination based on several factors.  *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000); *see* 29 C.F.R. § 1630.2(n)(2) (listing factors to consider).  The ADA directs courts to consider "the employer's judgment as to what functions of a job are essential," such as the employer's written description for the job.  *Davis*, 205 F.3d at 1305; *see* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3) (listing sources of evidence).  We also look to the testimony of the plaintiff's supervisor,

among other factors.  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1257-58 (11th Cir. 2007).

For example, in *Earl*, we held that a store area coordinator's request to arrive at work at any time, without reprimand, was not a request for a reasonable accommodation because it, in essence, changed the essential functions of the job, which included punctuality.  207 F.3d at 1366-67.  *But see Holly*, 492 F.3d at 1257-61 (distinguishing *Earl* and concluding that fact issues existed as to whether strict punctuality was an essential job function).  Similarly, in *Jackson*, we held that a housekeeping aide's "presence on a routine basis" was an essential element of the job. *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir. 1994).

On the record presented, we conclude that Spears has not shown a genuine issue of material fact regarding whether the ability to work shift hours and a consistent schedule was an essential function of an available position with the Sheriff.  The job description for the detention deputy position lists, among other "performance standards," "arriving on time" and "working the entire shift."  *See* 42 U.S.C. § 12111(8).  In addition, Major Miller's testimony indicates that the detention deputies were on fairly rigid, rotating shift schedules of twelve hours, requiring Spears's timely presence on a consistent basis.  *See Earl*, 492 F.3d at 1366-67.  Accommodating Spears's request would have caused uncertainty in scheduling, caused other officers to be held over from previous shifts or called into

13

work on their days off, and increased the amount of overtime others worked. *See*

*Holly*, 492 F.3d at 1260-61 (noting that similar factors in *Earl* supported a finding

that punctuality was an essential function of the plaintiff's job).

Therefore, even if the Sheriff could have accommodated Spears's physical

inability to perform certain functions of the deputy detention officer by allowing

her to do light duty in the control room with no inmate interaction, Spears has not

identified any basis on which to conclude that she could have worked a consistent

schedule or a full shift at the relevant time.    And the Sheriff was under no

obligation to create a new position to accommodate Spears's specific requests. *See*

*Lucas*, 257 F.3d at 1256*; Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117

F.3d 1278, 1286 (11th Cir. 1997) ("Stated plainly, under the ADA a qualified

individual with a disability is not entitled to the accommodation of her choice, but

only to a reasonable accommodation." (internal quotation marks omitted)).

Turning to Spears's proposed accommodation of an extended leave of

absence using donated leave until she was able to return to full-time work, an

extended leave of absence of a definite duration, as opposed to an indefinite

duration, may be a reasonable accommodation in certain circumstances. *See*

*Wood*, 323 F.3d at 1312-13.   Spears points out that her doctor indicated that she

could return to full-duty work in October 2012, which was a definite period of

several months.   However, there is no record evidence showing that Spears

14

actually made a specific request that the Sheriff extend her leave using donated or other paid or unpaid leave until October.[3]

According to Day's deposition testimony, which is uncontroverted, an employee who wants to receive donated leave needs to request such leave from their fellow employees and fill out and submit a form. Day also testified that the procedure is specified in the Sheriff's policies. Because there has been no suggestion that Spears followed this procedure or otherwise requested an extended period of leave, the Sheriff's duty to provide an accommodation, or to engage in an "informal, interactive process" with respect to that accommodation, was not triggered. *See Gaston*, 167 F.3d at 1363-64; *see also Earl*, 207 F.3d at 1367.

To the extent that Spears argues that the district court erred in requiring her to establish that a reasonable accommodation exists before addressing the Sheriff's responsibilities, our precedent clearly holds otherwise. *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (stating that the employer's actions do not affect the plaintiff's initial burden of establishing that reasonable accommodations were available); *see also Earl*, 207 F.3d at 1367. Thus, we have rejected the argument that an "employer can be held liable merely for failing to engage in the [interactive] process itself (regardless of whether a 'reasonable accommodation' could in reality have been made for the employee)." *Willis*, 108 F.3d at 285.

---

[3] Nor does it appear that Spears actually would have wanted to work in the deputy detention position in October 2012.

15

"[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." *Id.*

Accordingly, the district court properly granted summary judgment to the Sheriff on the basis that Spears was not a "qualified individual" under the ADA because she had failed to identify a reasonable accommodation that would allow her to perform the essential job functions of an available position with the Sheriff.

**AFFIRMED.**