[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13995
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00456-RH-CAS

SHERRI S. LUKE,

Plaintiff-Appellant,

versus

BOARD OF TRUSTEES FLORIDA A&M UNIVERSITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 22, 2016)

Before HULL, WILSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Sherri Luke appeals the district court's grant of summary judgment in favor of her former employer, Florida A&M University ("FAMU"), in Luke's employment discrimination and retaliation suit. Luke asserted claims of disability discrimination, under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, and retaliation, under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a), and the FCRA.[1] No reversible error has been shown; we affirm.

Beginning in 2003, Luke was employed as a sworn law enforcement officer in FAMU's police department. Luke was later promoted to sergeant of the Crime Prevention Unit, an administrative position that required no patrol duty or uniform. In June 2013, FAMU hired a new police chief: Chief Terence Calloway. In an effort to increase the visibility of the police department on campus, Chief Calloway initiated a restructuring of the entire department. Pertinent to this appeal, the revised department policies required all officers to wear uniforms, required all officers to work 12-hour patrol shifts, and eliminated all "limited" or "light duty" positions.

---

[1] Luke also asserted that FAMU discriminated against her based on her gender, age, and whistleblowing activity. Because Luke raises no substantive challenge to the district court's grant of summary judgment on these claims, they are abandoned for appeal. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014).

2

Luke suffered from gastroparesis, Barrett's esophagus, reflux, and "one or more hernias," all of which caused her discomfort in her midsection. To accommodate her medical conditions, Luke requested that she be allowed to use a shoulder holster instead of the standard-issue duty belt. After Chief Calloway's policies went into effect, Luke also requested to be allowed to wear a jumpsuit-style uniform as a reasonable accommodation. Both of these requests were ultimately approved. At some point, however -- before Luke obtained an approved uniform -- she was assigned to work for several days as a dispatcher (a non-sworn position that required no uniform) instead of as a sworn patrol officer.

Shortly thereafter, Luke injured her knee and underwent knee surgery in September 2013. As a result of her surgery, Luke was unable to return to work for several months. On 10 June 2014 -- after having been on an approved leave of absence for over nine months -- Luke requested another extension of her medical leave, based on her doctor's assessment that she would be unable to work patrol shifts for "at least another six months."

On 25 June 2014, FAMU denied Luke's request. In addition, because Luke continued to be unable to perform an essential function of her job despite having been provided with several reasonable accommodations, FAMU notified Luke that her employment was being terminated. This notice was 6 days before Luke would

3

have become eligible for an additional 12 weeks of leave under the Family Medical

Leave Act ("FMLA").

We review the district court's grant of summary judgment de novo, viewing

the evidence and all reasonable factual inferences in the light most favorable to the

nonmoving party.  Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir.

2006).

I.

On appeal, Luke first argues that the district court erred in granting summary

judgment on her claim for disability discrimination.  Luke identifies three

reasonable accommodations that she contends FAMU failed to provide: (1) a

jumpsuit and shoulder holster; (2) reassignment to an open dispatch position; and

(3) extension of her medical leave.

Under the Rehabilitation Act and the FCRA,[2] an employer must provide a

reasonable accommodation for an employee with a known disability, unless the

employer can demonstrate that the accommodation would impose an undue

hardship on the employer's business.  Lucas v. W. W. Grainger, Inc., 257 F.3d

---

[2] We analyze claims filed under the Rehabilitation Act and the FCRA using the same legal
framework that applies to claims filed under the Americans with Disabilities Act.  Holly v.
Clairson Indus., LLC, 492 F.3d 1247, 1255 (11th Cir. 2007) (FCRA); Sutton v. Lader, 185 F.3d
1203, 1208 n.5 (11th Cir. 1999) (Rehabilitation Act).

4

1249, 1255 (11th Cir. 2001).  "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions."  Id. at 1255-56.  A qualified employee is "not entitled to the accommodation of her choice, but only to a reasonable accommodation."  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir. 1997).

First, the record reveals that FAMU in fact approved Luke's requests for a jumpsuit and for a shoulder holster.  Although Luke experienced some delay in receiving the requested items, she has not demonstrated that the delays were unreasonable.  See Terrell v. USAir, 132 F.3d 621, 628 (11th Cir. 1998) (a three-month delay in providing the requested accommodation was not unreasonable when Plaintiff had access to a drop keyboard and was not required to type when she had no access).  Except on one occasion, Luke was not required to wear her duty belt; and she was never required to wear the standard uniform.  Moreover, Luke testified that she was not rendered unable to work as a result of the delays.  Instead, FAMU provided a temporary accommodation by assigning Luke to a dispatch position for a brief period until she could acquire a suitable uniform.[3]  The record also shows that FAMU was working on obtaining the requested items so that they would be available to Luke when she returned from her medical leave.

---

[3] To the extent Luke has asserted in the district court that the dispatch assignment was discriminatory, she has abandoned that argument on appeal.

5

The district court has thus committed no error in rejecting Luke's disability-discrimination claim on this ground.

About Luke's second argument, the district court abused no discretion in determining that Luke failed to plead sufficiently her claim that FAMU refused to accommodate her disability by not reassigning her to an open dispatch position. See Lightfoot v. Henry Cty. Sch. Dist., 771 F.3d 764, 779 (11th Cir. 2014) (reviewing for abuse of discretion the district court's determination that a claim was not pled adequately in the complaint). Although Luke's third amended complaint alleged generally that FAMU failed to accommodate Luke's request to be placed on "light duty," nowhere in the complaint did Luke allege specifically that FAMU failed to reassign her to a non-sworn dispatch position. To the contrary, in her complaint, in her EEOC charges, and during her deposition testimony, Luke asserted that FAMU discriminated against her by assigning her temporarily to work dispatch: a position for which Luke alleges she was untrained and that she considered demeaning. The first time Luke plainly raised a claim about her wishing reassignment to a dispatch position was in response to FAMU's motion for summary judgment. At that point in the proceedings, Luke was foreclosed from raising a new legal claim: just too late. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1313 (11th Cir. 2004).

6

Luke also contends that FAMU failed to provide a reasonable accommodation when it refused to extend her medical leave, allowing her to become eligible for additional FMLA leave. "While a leave of absence might be a reasonable accommodation in some cases . . . an accommodation is unreasonable if it does not allow someone to perform his or her job duties in the present or in the immediate future." Wood v. Green, 323 F.3d 1309, 1314 (11th Cir. 2003). When FAMU denied Luke's request for additional medical leave, Luke had already been on approved medical leave for nine months. Nothing evidenced at the time that Luke would have been able to perform her job duties even after an additional 12 weeks of FMLA leave. Instead, Luke's doctor reported that Luke would be unable to perform patrol duties -- an essential function of Luke's sergeant position[4] -- "for at least another six months." Because extending Luke's medical leave would still not have enabled Luke to perform her job duties in the "present or immediate future," it was no reasonable accommodation. See id. (an employer is not required to provide an indefinite leave of absence).

Because Luke has identified no reasonable accommodation that would have allowed her to perform the essential functions of her job, FAMU was entitled to judgment as a matter of law on Luke's claim for disability discrimination.

---

[4] The parties do not dispute that performing patrol duties constituted an essential function of Luke's position. A 2012 job description for a FAMU law enforcement sergeant says that a sergeant's primary duty -- making up 40% of the sergeant's overall duties and responsibilities -- was to patrol the university on foot or in a mobile unit.

7

II.

Under both Title VII and the FCRA, employers are prohibited from retaliating against an employee for opposing an unlawful employment practice. See 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7).  We assess retaliation claims under the FCRA using the same framework employed for Title VII retaliation claims.  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th Cir. 2010).

To establish a prima facie case of retaliation, Luke must show (1) that she engaged in protected activity, (2) that she suffered a materially adverse action, and (3) that a causal connection existed between the activity and the adverse action. See Dixon v. Hallmark Cos., 627 F.3d 849, 856 (11th Cir. 2010).  About the first element, Luke engaged in the following protected activities: (1) in June 2013 (before Chief Calloway joined the department), Luke submitted a charge of discrimination to FAMU's equal employment opportunity office; (2) on 3 September 2013, Luke filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"); and (3) on 9 January 2014, Luke filed additional charges with the EEOC.

8

About causation, "Title VII retaliation claims require proof that the [employer's] desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013). A plaintiff may satisfy her burden of proving causation by demonstrating a "close temporal proximity between the statutorily protected activity and the adverse employment action." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). "But mere temporal proximity, without more, must be 'very close.'" Id.

The evidence, viewed in the light most favorable to Luke, is insufficient to demonstrate a causal link between Luke's protected activity and the complained-of adverse employment actions. First, the record demonstrates clearly that Chief Calloway's decision to eliminate light duty positions was implemented department-wide as part of a larger restructuring of FAMU's entire police department. Nothing evidences that the policy change was made in retaliation for Luke's having filed earlier charges of discrimination against FAMU's police department. No but-for causation has been shown. See Univ. of Tex. Sw. Med. Ctr., 133 S. Ct. at 2528.

Luke has also failed to demonstrate a causal connection between her protected activity and her termination. Luke's employment was terminated on 25 June 2014: nearly six months after Luke filed her second charge of discrimination

9

with the EEOC.  In the absence of other evidence, these events were not sufficiently close in time to demonstrate causation.  See Thomas, 506 F.3d at 1364 (a three-month gap between the protected activity and the adverse action was not "very close" and was, thus, insufficient to demonstrate a causal connection).  Nor has Luke demonstrated that FAMU engaged in a series of adverse employment actions after learning of Luke's protected activity.  See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1457 (11th Cir. 1998) (a plaintiff may establish causation by showing that her employer knew of her protected activity, and that a series of adverse employment actions commenced shortly thereafter).[5]

AFFIRMED.

---

[5] Even to the extent that Luke could establish a prima facie case of retaliation, she has also failed to show that FAMU's legitimate, non-retaliatory reason for terminating her employment -- her inability to perform an essential function of her job -- was a pretext for retaliation.