[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-13467

Non-Argument Calendar

————————————————

SPENCER BUENO,

Plaintiff-Appellant,

*versus*

ARHAUS, LLC,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:23-cv-81290-RLR

————————————————

Before ROSENBAUM, ABUDU, AND WILSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Spencer Bueno appeals the district court's order granting summary judgment in favor of his former employer Defendant-Appellee Arhaus, LLC (Arhaus) in his action for disability discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(a). On appeal, Bueno argues that the district court erred in granting summary judgment because genuine issues of material fact existed as to each element of his prima facie case of disability discrimination. After careful review, we find that there is a genuine issue of material fact as to whether Bueno was a "qualified individual." Thus, we vacate and remand for further proceedings.

## I.

Bueno was a full-time design consultant for Arhaus, a furniture retailer. When he was hired, he received a copy of Arhaus's Employee Handbook which outlined the company's attendance and leave of absence policies. The Handbook states that "any Leave of Absence . . . requires the [employee] to maintain regular communication with their manager and Human Resources every two weeks." And employees who will be absent from or late to work must "personally notify [their] supervisor at least one hour in advance of the start of [their] shift."

Bueno suffers from anxiety and depression. On January 30, 2022, Bueno left work early. Bueno testified that he told Anthony

McKenna, the store manager, before leaving. That afternoon, Bueno texted McKenna: "Sorry I had to bounce. Having some type of cluster headache with anxiety. I'll be talking [to] a professional tomorrow. I think it's just stress."

The parties dispute whether Bueno was scheduled to work the following day, January 31. On the afternoon of the 31st, Bueno texted McKenna: "Hey Anthony, I'm going to stay back. I didn't know that the headache thing could be covid stuff." Bueno testified that this text message was meant to inform McKenna that he would not be coming in the next day, February 1. Bueno did not show up for his scheduled shift at 10 a.m. on February 1. McKenna texted Bueno at 11:44 a.m. to ask if Bueno had gotten a COVID-19 test and why Bueno did not call in for his shift that morning. Bueno responded with a doctor's note at 4:24 p.m. which read: "Please excuse Spencer Bueno from work from 1/30/22-2/20/22 due to stress and anxiety. He can return 2/21/22 as long as he is feeling better."

After receiving the doctor's note, Arhaus placed Bueno on leave and scheduled him to return to work on February 21. Bueno did not ask to extend his leave or provide documentation saying he could not return to work as scheduled. But Bueno did not report to work on February 21. Bueno and Arhaus agree that Arhaus terminated Bueno on February 21, but they dispute the circumstances surrounding the termination.

According to Bueno, Arhaus's internal emails show that his supervisors and human resources decided to terminate him several

days before his scheduled return. On February 19, McKenna sent Kim Rauen, Arhaus's regional manager, an email with the subject line "Spencer Bueno Termination Documentation." McKenna said he was "making sure" he had his "ducks in a row for Monday," February 21. McKenna forwarded that email to the Director of Human Resources on February 20.

At 9:56 a.m. on February 21—four minutes before Bueno's shift was scheduled to begin—the Director of Human Resources responded saying he spoke with McKenna, and they were "aligned with termination based on three things." The email stated that the reasons for Bueno's termination were his early departure without notice on January 30 and his failure to notify his supervisor (McKenna) before his absences on January 31 and February 1. At 10:38 a.m., Rauen replied to the thread and told everyone that Bueno did not show up for his shift that morning, so she was "absolutely 'aligned' with termination." The email chain continued and discussed mechanics for the termination.

On February 23, two days after terminating Bueno, the Director of Human Resources emailed McKenna with "adjustments" to the termination documents, and he added a fourth line to the list of reasons for termination: "1/21 – No Call No Show – did not return per his doctors note."[1]

---

[1] Presumably the date "1/21" should have read "2/21." Neither the parties nor the district court take issue with the typo so neither do we.

24-13467                Opinion of the Court                5

Bueno testified that he learned about his termination the morning before his scheduled shift on February 21 when he was removed from an Arhaus employee WhatsApp group chat.[2] Later in the day, McKenna called Bueno and left a voicemail formally terminating Bueno. Arhaus sent Bueno a final termination letter on February 24. According to the letter, Arhaus terminated Bueno because of four no-call-no-shows.

Bueno filed this lawsuit in September 2023, alleging that Arhaus's decision to terminate him violated the ADA. The district court concluded that there was sufficient evidence to find that Arhaus regarded Bueno as having a disability. 42 U.S.C. § 12102(1)(C). But the district court still granted summary judgment for Arhaus because it said Bueno failed to raise a genuine dispute of material fact on whether he was a "qualified individual" under the ADA, *see* 42 U.S.C. § 12111(8). His proposed reasonable accommodation was "effectively a request for indefinite leave, which the Eleventh Circuit has repeatedly rejected as an unreasonable accommodation." Bueno timely appealed.

---

[2] According to Arhaus, McKenna removed Bueno from the WhatsApp at 7:44 p.m. on February 21—after the formal termination. The record includes screenshots purporting to show when Bueno was removed from the group chat. But the two screenshots lack time stamps showing when McKenna removed Bueno, and the transcript of the chat does not line up with the messages in either screenshot. As it must at the summary judgment stage, the district court presumed that Bueno's testimony is correct, and that he was removed from the group before his shift on February 21.

## II.

"We review a grant of summary judgment de novo, viewing all facts in the record in the light most favorable to the nonmovant and drawing all inferences in [his] favor." *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1316–17 (11th Cir. 2024). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if the nonmoving party produces sufficient evidence to allow a reasonable factfinder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

"[A] plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). We generally prefer that the district court address in the first instance issues raised by the parties. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 & n.4 (11th Cir. 2001).

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). We analyze ADA discrimination claims based on

circumstantial evidence under the *McDonnell Douglas*[3] burden-shifting framework. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191 (11th Cir. 2024). The *McDonnell Douglas* framework first requires the plaintiff to show a prima facie case of discrimination, then requires the defendant to proffer a legitimate, nondiscriminatory reason for the employment decision, and finally requires the plaintiff to show that the proffered reason was pretextual. *Akridge*, 93 F.4th at 1191; *see also McDonnell Douglas*, 411 U.S. at 801–05.

To establish a prima facie ADA-discrimination claim, the plaintiff must show that he (1) has a disability, (2) is a qualified individual, and (3) was discriminated against because of his disability. *Lewis v. Union City*, 934 F.3d 1169, 1179 (11th Cir. 2019). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). "[M]ajor life activities include, but are not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). After the ADA Amendments Act of 2008, an individual meets the requirement of "being regarded as having such an impairment" under the ADA if he was subjected to discrimination because of an "actual or perceived mental impairment, regardless of whether the

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

A "qualified individual" under the ADA is an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Essential functions "are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Holly v. Clairson Indus. LLC*, 492 F.3d 1247, 1257 (11th Cir. 2007) (quotation marks omitted). If "the individual is unable to perform an essential function of his job, even with an accommodation, he is, by definition, not a 'qualified individual' and, therefore, not covered under the ADA." *Id.* at 1256 (quotation marks omitted).

We determine whether a function is essential on a case-by-case basis, "examining *a number of factors.*" *Id.* (quotation marks omitted). Courts give "substantial weight" to the employer's judgment of which functions are essential, considering both the company's "official position"—such as job descriptions or employee handbooks—and the testimony of supervisors. *Id.* at 1257–58; *see* 42 U.S.C. § 12111(8).

"The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). While a leave of absence "might be a reasonable accommodation in some cases," a request for indefinite leave is not reasonable. *Id.* An employee who requests an indefinite leave of absence and to return to work "at

some uncertain point in the future" is "not a qualified individual under the ADA." *Id.*

In *Duckett v. Dunlop Tire Corp.*, an employee with a disability admitted that he was unable to return to work when he was terminated, but he claimed he should have been allowed, as a reasonable accommodation, to stay on medical leave under his employer's salary continuation program. 120 F.3d 1222, 1223–25 (11th Cir. 1997) (per curiam). We held that his requested accommodation was not reasonable because "his need for leave would have been for an indefinite period—not just a month or two," and the plaintiff "could not represent that he likely would have been able to work within a month or two" as he "had already been on medical leave for ten months . . . and had no way of knowing when his doctor would allow him to return to work in any capacity." *Id.* at 1226. We concluded that the plaintiff's "request that his employer accommodate any disability . . . by providing him with two more months leave when he could not show he would likely be then able to labor is not 'reasonable' within the meaning of the ADA: the course of Plaintiff's health was too uncertain." *Id.*

In *Frazier-White v. Gee*, we held that an employee's request to extend her light-duty status was indefinite and "unreasonable as a matter of law." 818 F.3d 1249, 1256 (11th Cir. 2016). The employee "did not suggest a time frame for when she would be able to resume her full-duty position, and she later admitted at the due process hearing that she did not know how much time she needed or whether any amount of time would be sufficient." *Id.*

Here, the district court did not err in finding that a reasonable jury could find that Arhaus regarded Bueno has having a disability. As the district court noted, Bueno's doctor's note supports that Arhaus knew, at least as of February 1, 2022, that Bueno suffered from anxiety and could not attend work for three weeks due to his anxiety and stress. *See Lewis*, 934 F.3d at 1181.

But the district court erred in finding that there was no genuine issue of material fact as to whether Bueno was a qualified individual under the ADA. The evidence, construed in the light most favorable to Bueno, supports a reasonable inference that at the time of his termination, he could have performed the essential functions of his job after receiving the reasonable accommodation of three weeks of medical leave. Bueno testified that he "was on the mend and ready to come back after [his] doctor's note."

Unlike in *Wood* and *Frazier-White*, Bueno requested leave until a definite date—February 21. Bueno also testified that on February 21, when his medical leave ended, he intended to go to work that day and was "dressed and ready." Taking the facts in the light most favorable to Bueno, he gave no indication that he would not return to work that day prior to his belief that he was fired. *Cf. Duckett*, 120 F.3d at 1223–25. We vacate the district court's grant of summary judgment in favor of Arhaus and remand for the district court to consider the remaining elements of his claim for disability discrimination. *See Wilkerson*, 270 F.3d at 1322 & n.4.

**VACATED AND REMANDED.**