BALDOCK, Circuit Judge:
Plaintiff Jenny Martin obtained a jury verdict in her favor on a claim that her former employer, Defendant Eli Lilly & Company (“Lilly”), discriminated against her on the basis of her disability in violation of the Americans with Disabilities Act (“ADA”), 42 U.S.C. § 12112. Lilly challenges the district court’s denial of its motion for judgment as a matter of law because, in its view, Martin did not suffer an adverse employment action. Exercising jurisdiction under 28 U.S.C. § 1291, we agree with Lilly and reverse.
I.
The parties are familiar with the relevant, facts and procedural history of this case, and we only summarize them here. Martin began working at Lilly in 2001 as a pharmaceutical sales representative. In 2004, Martin transferred from North Carolina to Atlanta, Georgia, and was also diagnosed that same year with major depressive disorder. Beginning in July 2008, Martin worked directly under Darrell Craven in the Neuroscience Account Based *954 Sales (“NABS”) division. For the 2009 and 2010 sales years, Craven submitted negative performance evaluations for Martin based in part on his perception of her emotional intelligence (“EQ”), a subjective measurement used to assess an employee’s awareness of her environment and the impact she has on others. He also gave her “low successful” year-end ratings.
In 2011, Lilly hired ZS Associates to help reorganize its NABS division by downsizing the sales force, drawing new sales territories, and matching existing sales representatives to the newly-drawn territories. Lilly worked with ZS Associates to establish several “business rules” to determine which employees would be automatically placed in the newly-drawn territories and thus would be guaranteed to remain employed after the 2011 reorganization. Relevant here, the third business rule considered each employee’s HR Index score, a newly created tool that reflected a weighted blend of seniority and performance ratings for the previous three years.
As a result of the reorganization, Lilly reduced its regions in Georgia from three to two. Martin lost the northern territory to Bessie Grant, another sales representative whose HR Index score was higher based on slightly more seniority (10.45 years to Martin’s 9.88 years) and her better job performance in 2011 (“successful” versus Martin’s “low successful”). The two had the same ratings in 2009 (“successful”) and 2010 (“low successful”). As a result, Martin was not automatically placed in a newly-drawn territory.
Lilly announced in June 2011 that the reorganization would take place in January 2012, and it encouraged Martin and other soon-to-be-displaced employees to apply for open positions at Lilly. From the announcement in June 2011 until March 2012, Lilly allowed the displaced employees to retain their current positions and also provided them with full salary and benefits. Martin applied for positions in Atlanta and North Carolina and expressed that North Carolina was “geographically closest to where I want to be.” Lilly offered Martin a position as a sales representative in the NABS division in Charlotte, North Carolina, a position for which Martin applied and which would have resulted in Martin working in the same position from which she was displaced—again reporting directly to Craven—but in a different location. Lilly would have paid Martin’s relocation expenses, but Martin declined the position after deciding with her family and health care providers that, for her mental health, she should not continue to report to Craven. When Martin’s employment with Lilly ended in March 2012, she wrote to other Lilly employees that her “heart [wa]s just not in the industry” and that she wanted to leave the pharmaceutical and biotechnology world to pursue her passion. Martin remained in Atlanta and works as a realtor.
Martin filed a complaint against Lilly alleging causes of action under the ADA and the Family and Medical Leave Act (“FMLA”), 29' U.S.C. § 2601 et seq. By granting in part and denying in part Lilly’s motion for summary judgment, the district court narrowed the theories Martin could pursue in her ADA discrimination claim. The district court barred her from pursuing a claim that her eventual termination was an adverse employment action because she failed to exhaust her administrative remedies on that theory. The district court also held that Martin had not made a sufficient showing that Craven’s negative performance evaluations of her disentitled her to a merit raise. But the district court permitted Martin to proceed on a theory that her “negative performance evaluations played a significant role in her displacement from Lilly,”
*955 Martin tried her remaining ADA and FMLA claims to a jury. Lilly moved for judgment as a matter of law on all the claims at the close of Martin’s case-in-chief and again at the close of all the evidence. The district court denied the motion except as to punitive damages. The jury thereafter found in Martin’s favor on only the ADA discrimination claim. The jury did not award any damages for lost wages or benefits, but awarded $600,000 to compensate Martin for emotional pain and mental anguish caused by the adverse employment action.[1] After trial, Lilly renewed its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 and filed an alternative Rule 59 motion for new trial. The district court denied the motions but remitted the compensatory damages award to the statutory cap of $300,000.
II.
We review de novo the district court’s denial of Lilly’s motion for judgment as a matter of law, applying the same standards as the district court. See Wood v. Green, 323 F.3d 1309, 1312 (11th Cir. 2003). Under Rule 50, a party is entitled to judgment as a matter of law “[i]f [an opposing] party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing] party on that issue.” Fed. R. Civ. P. 50(a)(1); see also Bogle v. Orange Cty. Bd. of Cty. Comm’rs, 162 F.3d 653, 659 (11th Cir. 1998) (“[I]n order to survive a defendant’s motion for judgment as a matter of law, ... the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiffs favor on each and every element of the claim.”). We review all the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party without making credibility determinations or reweighing the evidence. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192-93 (11th Cir. 2004) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-151, 120 S.Ct. 2097, 2109-2110, 147 L.Ed.2d 105 (2000)). We “give credence to the evidence favoring the non-movant as well as that ‘evidence supporting the moving party that is uncontradict-ed and unimpeaehed, at least to the extent that that evidence comes from disinterested witnesses.’” Reeves, 530 U.S. at 151, 120 S.Ct. at 2110 (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, at 300 (2d ed. 1995)).
III.
The ADA prohibits a covered entity from discriminating “against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.” 42 U.S.C. § 12112(a). To prevail on a claim for intentional discrimination under the ADA Martin had to prove by a preponderance of the evidence that she had a disability; that she was qualified to work in her position, with or without some reasonable accommodation, despite her disability; and that she suffered an adverse employment action because of her disability (i.e., that she was discriminated against based on her disabil *956 ity). See Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1149 (11th Cir. 2005); Doe v. Dekalb Cty. Sch. Dist., 145 F.3d 1441, 1445 (11th Cir. 1998).
Lilly does not challenge the jury’s findings that Martin was disabled and was a qualified individual, but it takes issue with the jury’s remaining findings that Martin suffered an adverse employment action and that Lilly took that action because óf her disability. The jury had found that one or more of the following was an adverse action: her 2009 performance evaluation and year-end rating, her 2010 performance evaluation and year-end rating, or the displacement from her original territory. The verdict form did not ask the jury to identify more specifically which action or actions it found to be adverse. After thoroughly reviewing the record, we conclude that no reasonable jury could find that any of these actions, standing alone or together, constituted an adverse employment action.
The ADA prohibits a wide variety of adverse employment actions when the employer takes those actions for a prohibited reason. Dekalb, 145 F.3d at 1447. “An employment action is considered ‘adverse’ only if it results in some tangible, negative effect on the plaintiffs employment.” Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001). “A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998); see also Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001) (explaining that the various terms courts have used to describe the “threshold level of substantiality,” such as “significant,” “materially adverse,” and “serious and tangible,” are “essentially interchangeable” and all require that the employer’s action impacts the ‘“terms, conditions, or privileges’ of the plaintiffs job in a real and demonstrable way”). We apply an objective test and require a plaintiff to demonstrate that a reasonable person in her position would view the employment action in question as adverse. Dekalb, 145 F.3d at 1448-49.
At the outset, we note that in the district court’s order denying Lilly’s motion for judgment as a matter of law, the district court in essence determined that the performance evaluations and year-end ratings, on their own, did not constitute adverse actions because they did not directly result in Martin being denied a pay raise. Instead, the district court explained that the evaluations and year-end ratings could be adverse because they led to a tangible, negative effect on Martin’s employment by contributing to her displacement. We agree that the evaluations and year-end ratings, on their own, did not constitute adverse actions.
“Negative performance evaluations, standing alone, do not constitute adverse employment action,” Lucas, 257 F.3d at 1261, and “courts are wisely reluctant to treat job performance memoranda as actionable ,.. where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline,” Davis, 245 F.3d at 1241; cf. Gillis v. Ga. Dep’t of Corr., 400 F.3d 883, 888 (11th Cir. 2005) (“[A]n evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action .... ”). Although Martin maintains that her performance ratings negatively impacted her compensation, no reasonable jury could conclude on this record that the “low-successful” performance ratings led to her losing out on a salary increase. *957 Although Martin did not receive any salary increases while working directly under Craven, the evidence was insufficient to determine how Lilly awarded salary increases or to allow a reasonable jury to conclude without speculating that Martin would have received pay raises had she received “successful” ratings.
Martin also contends the performance evaluations may stand on their own as adverse actions because they interfered with her ability to obtain á new position at Lilly in Atlanta, and thus, they led to her termination. Evidence at trial indicated that the Lilly managers who interviewed Martin during her displacement period requested her 2008, 2009, and 2010 performance reviews. But the evidence presented at trial did not reveal to what extent the Atlanta hiring managers considered Martin’s performance reviews, the qualifications and experience they were seeking, or Martin’s competition within Lilly for those positions. The evidence is simply insufficient for a reasonable jury to conclude that the performance reviews led to her failing to get a job with Lilly in Atlanta. While negative reviews may affect an employee’s future prospects, “[a] negative evaluation that otherwise would not be actionable will rarely, if ever, become actionable merely because the employee comes forward with evidence that his future prospects have been or will be hindered as a result.” Davis, 245 F.3d at 1243.
We thus turn to whether Martin’s displacement was an adverse employment action for which Lilly may be held liable under the ADA. The evidence at trial demonstrated that the “low successful” ratings Martin received in 2009 and 2010 made the difference in her losing the nórthern-Geor-gia sales territory to Grant through the HR Index. The result of the displacement was that Lilly did not automatically place Martin in a sales territory. But this is not the end of the story. Determining whether an employer’s action is adverse “will often depend upon the particular circumstances” of the case because “[cjontext matters.” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). Here, we must also consider that Lilly gave Martin six months to obtain a new job before the reorganization and displacement took effect in January 2012 and another three rnonths after that to continue searching for positions while retaining her full salary and benefits." Although Martin had to apply for positions within Lilly (rather than being automatically placed in a position), Lilly offered Martin a position as a sales representative in the NABS division in Charlotte, North Carolina. This was the same position Martin held in Atlanta, was a position for which she had applied, and was in a location she requested.
An employment action is not adverse if the employer rescinds it before the employee suffers any tangible harm. See Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001). For instance, in Stavropoulos v. Firestone, 361 F.3d 610 (11th Cir. 2004), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 648 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), an untenured university professor alleged that she suffered an adverse action as a result of retaliation under Title VII[2] when she learned that *958 the university art faculty voted not to renew her contract. She filed a grievance to challenge that decision, and the university reversed course. The professor retained her job without losing any pay or benefits. 361 F.3d at 615. Here, to the extent the position in Charlotte was a purely lateral transfer, which would not be adverse, see Dekalb, 145 F.3d at 1450 (stating that a purely lateral transfer is not an adverse employment action), Lilly essentially rescinded any adverse action that occurred with its notice of displacement when it offered Martin the Charlotte NABS position.[3]
The remaining consideration is whether the location of this new position made it something other than a purely lateral transfer. On this point, Martin maintains that the transfer to a city 240 miles from her current home in Atlanta was not a de minimus inconvenience. And despite the fact that Lilly would have paid her full relocation expenses and that Martin applied for positions in North Carolina, told Lilly that North Carolina was “geographically closest to where I want to be,” and testified at trial that she wanted to move to Charlotte, Martin asserts that the fact that she did not move to North Carolina after leaving Lilly demonstrates that the change of location was adverse.
To be sure, we have recognized that “transfers that involve arduous travel” may be adverse. Dekalb, 145 F.3d at 1452 (citing Maddow v. Procter & Gamble Co., 107 F.3d 846, 852 (11th Cir. 1997)). In Maddow, for example, we held that a sales representative made out a prima facie case that she was adversely affected when the only position her employer offered her would have required her to move from Atlanta to Alabama. 107 F.3d at 852-53. Even though the employee in Maddoiv later accepted a job outside the company that involved travel to Alabama, she had told her employer that she would accept only a position in Atlanta. Id. Here, quite the opposite is true. Martin applied for positions in Charlotte and told Lilly she wanted to be in North Carolina. Although we do not consider the subjective preferences of the employee to determine whether an employer’s action is adverse, we do consider what a reasonable person in the plaintiffs position would find adverse. Dekalb, 145 F.3d at 1453. And no reasonable jury could conclude that a plaintiff who received a job offer for a position for which she applied and in a location she sought suffers an adverse action because of the location of the transfer.[4]
Although not dispositive, the evidence also demonstrates that Martin did not turn *959 down the job offer in North Carolina because she considered the location adverse. Martin turned down the job because she decided she could not continue to work under Craven’s supervision and because she wanted to pursue other passions outside the pharmaceutical industry. In a somewhat baffling turn, Martin contends the position in North Carolina was adverse because she would have continued reporting to Craven. But the fact that she would have continued reporting to Craven supports Lilly’s proposition that the position was a lateral transfer. We understand why Martin may not have wanted to continue working under Craven, but the fact that Lilly offered her essentially the same position she lost through the reorganization does not somehow make the transfer adverse.
To sum up, we conclude that no reasonable jury could find that a reasonable person in Martin’s position suffered an adverse employment action, whether through the performance reviews and year-end ratings or her displacement from her territory. And because Martin failed to establish an adverse action, we reverse the district court’s denial of Lilly’s motion for judgment as a matter of law and remand for the district court to enter judgment in favor of Lilly.
[[Image here]]
For the reasons stated above, we REVERSE and REMAND for the district court to enter judgment in favor of Lilly on Martin’s ADA discrimination claim.

. The jury answered "yes” to the question whether "one or more of the following was an adverse action: Ms. Martin’s 2009 Performance Management Evaluation and subsequent year-end rating (issued in 2010), Ms. Martin’s 2010 Performance Management Evaluation and subsequent year-end rating (issued in 2011), or the displacement of Ms. Martin from her territory[.]”

. At the time we decided StawopOulos, our definition of an adverse action under Title VII’s anti-retaliation provision required an adverse employment action that either constituted an "ultimate employment decision” or else met "some threshold level of substantiality.” 361 F.3d at 617. The Supreme Court in Burlington Northern held that the scope of Title VII’s "antiretaliation provision extends beyond workplace-related or employment-re *958 lated retaliatory acts and harms,” thus rejecting our prior approach to limit adverse actions in this context to adverse employment actions. 548 U.S. at 67, 126 S.Ct. at 2414. Stavropoulos’s discussion of adverse employment actions nonetheless remains helpful in the ADA discrimination context.

. Martin also complains that, by not automatically placing her in an open position, Lilly forced her to endure the inconvenience and frustration of competing for open positions within Lilly. But no reasonable jury could conclude that this aspect of the displacement was material and serious enough to constitute an adverse action. Instead, it strikes us as similar to the inconvenience the professor in Stavropoulos faced: to challenge the non-renewal vote, the professor had to file a grievance and hire an attorney to represent her before the faculty senate. Even though the university did not reimburse her for the cost of that attorney, we concluded that ”[a]ny emotional distress or costs” the professor endured was "too insubstantial to be considered an adverse employment action since the review proved successful.” 361 F.3d at 618.

. Further, even if the offer to transfer to North Carolina was adverse because of the geographic location, there is no evidence that Lilly offered the position in that location on the basis of Martin’s disability. Rather, Lilly offered the position because Martin expressed her interest in that location through applying for the position and sharing her interest in *959 transferring to North Carolina. ‘‘[A] transfer cannot be ‘because of a disability’ if it occurred as the result of an employee’s own request.” Dekalb, 145 F.3d at 1454.