WILLIAM H. STEELE, UNITED STATES DISTRICT JUDGE
This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 25). The Motion has been briefed and is now ripe for disposition.[1]
I. Factual Background.[2]
Plaintiff, Terry E. McClain, brings claims of disability discrimination and retaliation against his former employer, Tenax Corporation. McClain was employed by Tenax from 2014 until July 7, 2016. (Owens Dep. (doc. 25, Exh. B), at 14-15; McClain Dep. (doc. 27, Exh. C), at 103-05.)
Terry McClain was born with certain hand and foot deformities. (Id. at 124.) In particular, McClain has only two fingers on each hand and approximately half a foot on each side, with no toes. (Doc. 27, Exhs.
*1199 A & B, at # 2.) Because of these deformities, McClain has difficulty grasping with his hands, which become so sore that he is unable to touch anything. (Doc. 27, Exh. B at # 2.) Similarly, walking and especially climbing up or down steps is very painful for McClain. (Id. )[3]
When McClain first began working at a Tenax manufacturing facility in May 2014, he was employed for 40 hours per week performing janitorial work. (McClain Dep., at 78.) In this capacity, McClain did not actually perform cleaning duties himself, but instead supervised temporary employees hired by Tenax for that purpose. (Doc. 27, Exh. F at # 14.) McClain was permitted to use an office on the Tenax premises during work hours on a daily basis, where he monitored the radio and rested until Tenax required his services. (McClain Dep., at 109-11.)[4]
In the fall of 2015, Tenax faced a production slowdown, as a result of which it laid off several employees and reduced the hours of others. (Owens Dep., at 21-22.) During this time period, Tenax went from operating nine or ten manufacturing lines to operating only two lines. (Id. at 24.) Pursuant to this pronounced slowdown, McClain's weekly hours were cut from 40 to 20 and his job became a part-time janitor position. (Id. at 26, 29; McClain Dep., at 44-45, 69.) In January 2016, Tenax offered McClain a machine operator job to restore his weekly hours to 40; however, McClain declined the position because he did not believe he was physically able to perform the work. (Owens Dep., at 29-30; McClain Dep., at 45.) In approximately May 2016, Tenax determined that it needed additional help in the shipping department to wrap pallets and move them to the warehouse. (Owens Dep., at 29.) At that time, plant manager Melvin Owens approached McClain about the pallet-wrapping position, asked him if he could do the work, and showed him what the job entailed. (Id. at 30-31.) After reviewing the job responsibilities, McClain accepted the position. (Id. ; McClain Dep., at 46.) As a result, beginning in May 2016, McClain's weekly work hours (which had been holding steady at the reduced 20 hours/week level since fall 2015) increased from 20 to 40, as he was engaged for Tenax in both the part-time janitor position and the pallet-wrapping responsibilities. (McClain Dep., at 95-96.) Pursuant to this new arrangement, McClain was expected to perform, and did perform, 20 hours of janitorial work each week, as well as an additional 20 hours of pallet-wrapping work. (Id. at 46, 107.)
McClain's assigned duties in this pallet-wrapping position consisted of the following: McClain would climb into a forklift, operate the forklift to move pallets of product onto a platform, exit the forklift, attach an adhesive-like wrapping material onto the side of the product on the pallet, press a button that would cause the platform to rotate and distribute the wrapping material around the pallet, climb back into the forklift, and transport the wrapped pallet to its designated location. (Doc. 27, Exh. D, at # 5.b.; Owens Dep., at 37-38.)
*1200 McClain would then repeat this process for the next pallet, and so on, for an average of approximately 18 pallets per day, sometimes more if no pallets had been wrapped over the weekend. (Owens Dep., at 39, 41-42.)
McClain's efforts to perform the pallet-wrapping job led to significant problems. He did not have difficulty actually operating the forklift. (McClain Dep., at 66.) However, the requirement that he repeatedly climb into and down from the forklift caused McClain's hands and feet to be sore and aching every day. (Doc. 27, Exh. F, at # 3.) McClain's reported discomfort in performing these activities was consistent with his limitations in grasping, walking and especially climbing because of his hand and foot deformities.[5] Also, it took McClain too long to do the pallet-wrapping work, which resulted in him receiving ongoing criticism from Tenax managers for getting backed up at the pallet-wrapping job, not putting enough wrap on the pallets, and needing help from other employees to complete the work. (Id. at # 2, 6, 8, 9.) To exacerbate matters, the delays in McClain's completion of his pallet-wrapping duties interfered with his ability to be prompt in completing his janitorial duties, such that Tenax supervisors would complain and even come get McClain off the forklift because the plant's bathrooms and floors were dirty. (Id. at # 4, 7, 10, 11.)
The net result of these circumstances was that just two days after he began performing the pallet-wrapper job, McClain went to the office of Tenax plant manager Melvin Owens and indicated that he was unable to perform the job. (Doc. 27, Exh. B at # 3.) Owens responded that there was nothing he could do about it. (Id. ) On a weekly basis thereafter, McClain complained to Owens and/or Tenax safety manager Donald Mixon that he was unable to perform the pallet-wrapping job. (Id. at # 4, 5, 6.) McClain specifically told them several times that the grabbing and stepping-down requirements of that job were simply too much for him given his physical impairments. (Doc. 27, Exh. F, at # 16.) Owens' response was that McClain should do the best he could. (Id. at # 5.) McClain repeatedly requested that Tenax accommodate his physical impairments by allowing him to return to work as a janitor on a full-time basis. (McClain Dep., at 76; doc. 27, Exh. F, at # 19.) In response, Tenax managers informed McClain that he "could either do the forklift and janitor job or quit." (Doc. 27, Exh. F, at # 20.) Thus, plaintiff's evidence is that Tenax informed McClain that it was not an option for him to remain at Tenax in a part-time janitorial capacity and relinquish the pallet-wrapping responsibilities that had proven too onerous to perform with his physical impairments.
Despite McClain's complaints about being physically unable to perform the pallet-wrapping job and his requests to be restored to a full-time janitorial position that he was able to do, Tenax continued to require him to do both jobs. (Doc. 27, Exh. B, at # 7.) Furthermore, Tenax hired another janitor named Curtis Richardson. (Id. ) Plaintiff's evidence is that Tenax "just hired [Richardson] to be a janitor," but that Richardson did not take over McClain's assigned janitorial duties while McClain still worked at Tenax. (McClain Dep., at 72-73.) According to Owens, Tenax hired Richardson as a "production helper" in late May 2016 or early June 2016, in which capacity Richardson did "some of the same things that [McClain] did" in his janitorial role, such as breaking *1201 down boxes and cleaning up pallet spills. (Owens Dep., at 33.)
Finally, on or about July 7, 2016, McClain contacted Owens by telephone when both were at the plant and told him that he simply "couldn't do the forklift job anymore." (McClain Dep., at 101-02.) Owens replied, "okay," and that was the end of the conversation. (Id. at 103.) Shortly thereafter, McClain spoke with Mixon face-to-face and "told him I couldn't do it anymore." (Id. at 104.) Mixon confirmed that McClain had already informed Owens, then said, "I'm sorry it came down to this," as to McClain's need to leave the job. (Id. at 104-06.) McClain returned to his office, collected his belongings, and left the workplace for the last time. (Id. at 106.) According to McClain, he "just couldn't do the job, the pallet wrapping job." (Id. at 107.) He left the Tenax plant in pain on July 7, 2016, and went to the doctor later that same day. (Doc. 27, Exh. F, at # 13.) His reason for walking out that day was that he "was unable to perform what they wanted [him] to do physically." (Id. at # 21.) To be clear, however, Tenax officials never expressly told McClain that he was fired or that he would not be permitted to work there in any capacity anymore. (Id. at 105-06.)
Based on these facts and circumstances, McClain's Complaint asserts two claims against Tenax for violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA"). First, McClain brings a claim predicated on the theory that Tenax "failed to accommodate Plaintiff as required by the ADA." (Doc. 1, ¶ 40.) Second, McClain asserts that Tenax "intentionally and wrongfully retaliated against Plaintiff for his request for accommodations under the ADA." (Id. , ¶ 44.) Tenax now moves for summary judgment as to both of these ADA causes of action.[6]
II. Summary Judgment Standard.
Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc. , 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." Id. (quoting Celotex Corp. v. Catrett , 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen , 965 F.2d 994, 999 (11th Cir. 1992) (internal *1202 citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." Offshore Aviation v. Transcon Lines, Inc. , 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).
The Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent. See Wilson v. B/E Aerospace, Inc. , 376 F.3d 1079 (11th Cir. 2004). Rather, "the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Id. at 1086 (citation omitted); see also Williamson v. Clarke County Dep't of Human Resources , 834 F.Supp.2d 1310, 1318 (S.D. Ala. 2011) (recognizing and applying rule that summary judgment standard is applied equally in employment discrimination cases as in other kinds of federal actions).
III. Analysis.
A. ADA Reasonable Accommodation Claim.
"The ADA prohibits discrimination by an employer against a qualified individual on the basis of a disability in any of the terms, conditions, or privileges of employment." Mazzeo v. Color Resolutions Int'l, LLC , 746 F.3d 1264, 1267 (11th Cir. 2014) (citation and internal marks omitted). "To establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability." Id. at 1268. With respect to the "unlawful discrimination" element, an employee who is actually disabled "may meet his or her prima facie burden ... by showing that the employer does not make reasonable accommodations for the disability." Lewis v. City of Union City , 877 F.3d 1000, 1013 n.4 (11th Cir. 2017) ; see also Boyle v. City of Pell City , 866 F.3d 1280, 1289 (11th Cir. 2017) ("An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer.").
In its Rule 56 Motion, Tenax advances two grounds for seeking dismissal of McClain's ADA failure-to-accommodate claim. First, Tenax challenges whether McClain has shown that he had a disability within the meaning of the ADA. (Doc. 25-1, at 10-12.) Second, Tenax maintains that it could not have failed to provide reasonable accommodation to McClain because no full-time janitorial position existed. (Id. at 13-14.) Each of these arguments shall be considered in turn.
By the terms of the statute, an individual has a "disability" for ADA purposes if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). On summary judgment, Tenax argues at length that McClain does not have a disability because his hand and foot deformities do not substantially limit the major life activity of working (i.e. , they do not restrict his ability to perform either a class of jobs or a broad range of jobs in various classes). According to Tenax, "Plaintiff's deformities did not substantially limit his ability to work. He performed his jobs without issue and to the full and complete satisfaction of Tenax.... Plaintiff has failed to establish that his deformities prevented him from performing the pallet-wrapping job...." (Doc. 25-1, at 12.) In so arguing, Tenax would apparently have this Court discount or ignore plaintiff's evidence that (i) his physical impairments greatly restricted his ability to perform the pallet-wrapping job *1203 in a timely and efficient manner, (ii) his hands and feet were sore and aching because of the grasping and climbing requirements of that job, (iii) Tenax officials repeatedly voiced complaints about the manner and pace at which McClain performed pallet-wrapping duties, and (iv) he notified Tenax on multiple occasions that he was physically unable to do the pallet-wrapping job. Viewed in the light most favorable to the plaintiff, record evidence demonstrates the existence of genuine issues of material fact as to whether McClain's "deformities prevented him from performing the pallet-wrapping job," thereby undermining Tenax's "no disability" argument.[7]
Alternatively, Tenax seeks summary judgment on the ADA failure-to-accommodate claim by arguing that McClain's requested accommodation was unreasonable and beyond the scope of what the law requires. Under the ADA, "[i]t is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified ... employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a). It is well-settled that "the plaintiff bears the burden of identifying a reasonable accommodation" and that "[t]he employer's duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation." Bagwell v. Morgan County Commission , 676 Fed.Appx. 863, 866 (11th Cir. 2017) (citations omitted).
Plaintiff's evidence is that McClain approached Tenax managers on a weekly basis for more than a month, commencing mere days after he began the pallet-wrapping job, and informed them he was unable to perform the essential functions of that position because of his physical impairments. On these occasions, McClain requested that Tenax restore him to the full-time janitorial position he had held previously. According to plaintiff, Tenax management's response to these recurring requests for accommodation was that McClain could either (i) keep working both *1204 the part-time pallet-wrapping job and the part-time janitorial job, or (ii) quit. Thus, plaintiff's evidence is that he specifically, repeatedly requested accommodations because his disability prevented him from performing the pallet-wrapping job, but that Tenax summarily rejected all such requests by telling McClain his only options were to keep doing both jobs (i.e. , to maintain the status quo ) or to resign his employment at Tenax altogether.
In seeking summary judgment on the ADA failure-to-accommodate claim, Tenax's argument is that it cannot be liable because McClain requested a full-time janitorial position but "Tenax had no full-time janitorial position." (Doc. 25-1, at 13.)[8] Defendant is correct that the ADA does not oblige an employer to create a new position for a disabled employee as a reasonable accommodation. See, e.g., Terrell v. USAir , 132 F.3d 621, 626 (11th Cir. 1998) ("we hold that USAir was not required to create a part-time position for Plaintiff" under the ADA); see also Spears v. Creel , 607 Fed.Appx. 943, 949 (11th Cir. 2015) ("the Sheriff was under no obligation to create a new position to accommodate Spears's specific requests"); Smith v. Sturgill , 516 Fed.Appx. 775, 776 (11th Cir. 2013) ("[a]n employer need not create a new position for an employee as an accommodation"). But Tenax points to no evidence that it lacked a full-time janitorial position in May-July 2016. At best, Tenax cites testimony from Melvin Owens that McClain worked as a part-time janitor at Tenax from May 2014 to fall 2015. (Owens Dep., at 23-24.) That is a different issue, and is tantamount to an apples-to-oranges comparison. There are no facts in the summary judgment record that would mandate a finding as a matter of law that Tenax did not have a full-time janitorial position as of May 2016-July 2016.[9]
*1205 More broadly, defendant is not entitled to summary judgment on the failure-to-accommodate issue because plaintiff's evidence (which, again, must be credited for summary judgment purposes) is that Tenax summarily rejected and unequivocally rebuffed McClain's requests for accommodation. To recap, plaintiff has shown that McClain repeatedly informed Tenax managers that the physical requirements of the pallet-wrapping position (and specifically, the stepping and grabbing components of the work) were too difficult for him because of the deformities to his hands and feet. Plaintiff's evidence is that he asked these Tenax managers for a reasonable accommodation in the form of modifying his duties to where he no longer performed the pallet-wrapping job. And plaintiff's evidence is that the Tenax managers told McClain he had only two options, either: (i) perform both the pallet-wrapping and janitorial jobs in their entirety, or (ii) resign his employment at Tenax altogether. This all-or-nothing ultimatum from Tenax slammed the door on any possibility of a reasonable accommodation, foreclosed the option of McClain working just part-time as a janitor (without the pallet-wrapping duties), and obliterated any possibility that the ADA interactive process could ever take place. See 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.").[10]
According to McClain, when confronted with the need for reasonable accommodation and given a specifically identified accommodation request, Tenax directed McClain to keep doing his full complement of duties (including the job he had told *1206 them he was physically unable to perform) or quit altogether. These facts give rise to a reasonable inference that McClain was subjected to unlawful discrimination because of his disability, and preclude entry of summary judgment in Tenax's favor on McClain's ADA failure-to-accommodate cause of action.
B. ADA Retaliation Claim.
Tenax also moves for summary judgment on McClain's claim of retaliation. The ADA's anti-retaliation provision states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To prevail on his ADA retaliation claim, McClain must establish each of the following elements: "(1) [ ]he engaged in a statutorily protected expression, (2) [ ]he suffered an adverse employment action, and (3) there was a causal link between the two." Frazier-White v. Gee , 818 F.3d 1249, 1258 (11th Cir. 2016). "The first element may be met by a request for a reasonable accommodation." Id. For the reasons discussed supra , the Court finds that McClain has made an adequate showing of the first element to withstand Tenax's summary judgment motion on the retaliation claim.
The critical question for purposes of defendant's Motion is whether McClain has shown that he suffered an adverse employment action. For ADA retaliation purposes, "[a]n adverse employment action is any act by the employer that dissuades a reasonable employee from engaging in the protected activity." Santandreu v. Miami Dade County , 513 Fed.Appx. 902, 906 (11th Cir. 2013). "An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment.... A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Martin v. Eli Lilly & Co. , 702 Fed.Appx. 952, 956 (11th Cir. 2017) (citations omitted). "We apply an objective test and require a plaintiff to demonstrate that a reasonable person in her position would view the employment action in question as adverse." Id.
In his summary judgment brief, McClain identifies the following purported adverse employment actions: (i) "Defendant failed to accommodate McClain as requested and instead hired Curtis Richardson;" (ii) "Defendant required McClain to work off the clock;" and (iii) when McClain requested accommodations, "Defendant told McClain he could continue to work both jobs 'or quit.' " (Doc. 27, at 17-18.)[11] Measured against the operative legal standard, these purported "adverse employment actions" fall well short of the mark, as a matter of law. As to the first and third items, the mere denial of a request for a reasonable accommodation cannot be an adverse employment action giving rise to a separate ADA retaliation claim. Were the law otherwise, every time an employee was denied a requested accommodation, he would be able to "double dip" by asserting both ADA failure-to-accommodate and ADA retaliation claims. (After all, an employer denies an accommodation request only because an accommodation request is made, thereby creating a circular causation tautology.)
*1207 Plaintiff has identified no authority, and the Court is aware of none, construing the statute in such a redundant manner. More generally, it is illogical and unreasonable to suggest, as McClain does, that an employer's refusal to grant a requested accommodation would dissuade a reasonable employee from making a request for an accommodation in the first place. An employer's response of "no" or "absolutely not" or even "do your job or quit" cannot meet the legal threshold of an "adverse employment action" because it would not dissuade a reasonable employee from requesting an accommodation (i.e. , engaging in protected activity). Implicit in making the request is the knowledge that it might be denied. To the extent that McClain would characterize the hiring of Richardson as an adverse employment action, the record does not support that stance because (i) there is no evidence that Tenax's hiring of Richardson, by itself, had a tangible, negative effect on McClain's employment; and (ii) even if there were, plaintiff has not shown that the timing of Richardson's hiring post-dated any of his protected activity. See generally Griffin v. GTE Florida, Inc. , 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, [the plaintiff] must show that the adverse act followed the protected conduct....").
Finally, McClain's assertion that he suffered an adverse employment action because Tenax required him to work "off the clock" fails for multiple reasons. As an initial matter, McClain offers no evidence that Tenax required him to work off the clock, or that it even knew he was working off the clock. The record evidence cited by McClain for this proposition (see doc. 27, ¶ 13) does not support it.[12] Furthermore, there is no indication that McClain's practice of clocking in after he started working each day began or was altered in any way by his requests for accommodation. To the contrary, McClain's verified statement is that he began working off the clock at Tenax starting on May 25, 2016, and that his uncompensated hours remained steady from May 25, 2016 through July 6, 2016. (See doc. 12, at # 6.) However, McClain also avers that his first request for accommodation was made on May 27, 2016 (doc. 27, Exh. B) at # 3-4. Thus, by his own reckoning, McClain was already working off the clock before he ever requested a reasonable accommodation from Tenax. Even if Tenax were "requiring" him to do so (which, again, McClain has never shown), plaintiff's ADA retaliation claim would fail on this point because his own evidence refutes the requisite but-for causation between the protected activity (i.e. , the requests for accommodation commencing on May 27) and the alleged adverse employment action (i.e. , the working off the clock commencing on May 25). See generally Frazier-White , 818 F.3d at 1258 ("The third element requires a showing of but-for causation.") (citation omitted).
Accordingly, the Court concludes that plaintiff has failed to make a prima facie showing of ADA retaliation because the record evidence in the light most favorable to him fails to establish a reasonable inference that either (i) McClain was subjected to an adverse employment action by Tenax, or (ii) there was a but-for causal relationship between any such adverse employment action and his requests for accommodation.
*1208 IV. Conclusion.
For all of the foregoing reasons, defendant's Motion for Summary Judgment (doc. 25) is granted in part , and denied in part . The Motion is granted as to Count III of the Complaint (retaliation under the Americans with Disabilities Act), and that cause of action is dismissed for plaintiff's failure to make a prima facie showing of retaliation. The Motion is denied as to the ADA claim predicated on failure to provide reasonable accommodation, inasmuch as numerous genuine issues of material fact remain.
This action remains set for a Final Pretrial Conference before the undersigned on April 17, 2018 at 9:30 a.m. , with jury selection to follow on May 1, 2018 .
DONE and ORDERED this 12th day of January, 2018.

The Court notes that defendant did not comply with the requirement that it furnish a courtesy copy of its supporting exhibits to the undersigned. See Civil L.R. 7(g) ("If a party's exhibits in support of ... a motion exceed fifty (50) pages in the aggregate, that party must submit a courtesy copy to chambers."). Notwithstanding that omission, the Court in its discretion will consider defendant's submissions in their entirety.

The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. See Smith v. LePage , 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment.... Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Also, federal courts cannot weigh credibility at the summary judgment stage. See Feliciano v. City of Miami Beach , 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." Burnette v. Taylor , 533 F.3d 1325, 1330 (11th Cir. 2008).

At all relevant times, Tenax plant manager Melvin Owens was well aware of McClain's hand and foot deformities, as evidenced by the facts that they lived near each other as children, engaged in sporting activities together, went to high school together, and remain friends today. (Owens Dep., at 9-10; doc. 27, Exh. F, at Exh. H.)

McClain testified that, in accordance with his janitorial duties, he would have occasion to utilize a forklift to transport boxes of trash to the dumpster and to move piles of broken-down boxes elsewhere on Tenax's premises. (McClain Dep., at 87-90.) There is no evidence, however, that he performed this function with any great frequency, or that forklift operation was more than an occasional or sporadic aspect of his janitorial job.

McClain's grasping limitation came into play for the pallet-wrapping job because he had to grasp a handrail to pull himself up onto the forklift and to step down from the forklift. (McClain Dep., at 60-61.)

McClain's Complaint also featured a claim alleging that he was an hourly employee who regularly worked more than 40 hours per week, but that Tenax failed to pay him overtime as required by the Fair Labor Standards Act. (Doc. 1, ¶¶ 20-37.) The parties settled and resolved McClain's FLSA claims in June 2017, at which time the Court entered an Order (doc. 18) approving such settlement as fair and reasonable. Thus, the only remaining issues joined in this action are McClain's claims that Tenax violated the ADA by failing to accommodate his disability and by retaliating against him for requesting accommodation. Defendant's Motion for Summary Judgment is directed at those claims.

The more fundamental problem with defendant's argument is that it assumes that the only major life activity implicated by McClain's hand and foot deformities is that of working. It does not appear that plaintiff has ever bound himself exclusively to that theory (i.e. , that working was the only major life activity at issue here). Of course, the ADA on its face sets forth a broad range of examples of major life activities within the meaning of the statute. See 42 U.S.C. § 12102(2)(A) ("major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working"). Defendant advances no record facts, legal argument or citations to authorities supporting the proposition that activities such as grasping, performing manual tasks, walking and climbing (which McClain's evidence shows his physical impairments have or may have substantially limited) do not qualify as major life activities for ADA purposes. More generally, the Eleventh Circuit has recognized that "Congress amended the ADA by enacting the ADA Amendments Act of 2008 ... with the goal of broadening the interpretation of a disability under the ADA." Lewis , 877 F.3d at 1010 ; see also 42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals ..., to the maximum extent permitted by the terms of this chapter."). Defendant's Motion does not address these issues, but instead cherry-picks contested record facts supporting its position that McClain was physically able to perform the pallet-wrapping job as conclusively proving that he does not have a disability for ADA purposes. As Tenax's argument is presently configured, defendant is not entitled to judgment as a matter of law on its contention that McClain does not have an ADA disability.

As a separate argument in its briefs, Tenax suggests that McClain did not actually require any accommodation to perform the pallet-wrapping job. Specifically, defendant observes that McClain's principal objection was that "he could not do this job because he had trouble getting in and out of the forklift," but that McClain "testified that he could do his janitorial work, which, by his own admission, included operating a forklift." (Doc. 25-1, at 12.) To the extent that Tenax purports to seek summary judgment on that basis, the argument is unpersuasive. Defendant is making a facially unreasonable comparison. A fair reading of McClain's evidence is that he could not perform the pallet-wrapping job because it required him to get in and out of the forklift numerous times each day in order to wrap upwards of 18 pallets on a daily basis, with each pallet necessitating that he get down from the forklift, attach the adhesive, wrap the pallet, then get back into the forklift to move the pallet. By contrast, there is no evidence that use of the forklift in McClain's janitorial capacity was anything more than an occasional job function. Stated differently, the evidence in the light most favorable to plaintiff is that it was the repeated, frequent climbing into and out of the forklift that caused him to request accommodation for the pallet-wrapping job, but the janitorial job had no such high-frequency demands. At the very least, genuine issues of material fact preclude entry of summary judgment for Tenax on the ADA failure-to-accommodate claim on a theory that McClain did not actually require any accommodation in order to perform the essential functions of the pallet-wrapping job. Similar reasoning defeats Tenax's likeminded argument that judgment as a matter of law is required because McClain's janitorial duties required him to visit different floors of the plant, possibly by staircase (although the record also contains references to an elevator).

Indeed, multiple record facts would appear to support the opposite inference. For example, the record reflects that McClain was not the only janitor employed by Tenax, with Owens describing McClain's duties as "[t]he same as all the other janitors that was there." (Owens Dep., at 21.) Further, Tenax needed additional labor for the janitorial function during the relevant time period, as evidenced by its hiring of a new janitor named Curtis Richardson in late May or early June 2016. (Doc. 27, Exh. B at *7 ("They knew I was unable to do both jobs, they turned around [sic ] hired another janitor, Curtis Richardson, and still required me to keep doing both jobs...."), Owens Dep., at 33 (Richardson was "doing some of the same things that [McClain] did").) Additionally, even taken at face value, defendant's argument reduces to mere semantics. Tenax is correct that Owens testified that McClain had never held a full-time janitorial position at Tenax, but (i) McClain's testimony (which must be credited on Rule 56 review) was to the contrary, and (ii) Owens admitted that from 2014 through fall 2015 McClain had been working full-time for Tenax performing a job that consisted of janitorial duties plus odds'n'ends. (Owens Dep., at 23-24.) It is that job (and not some newly created position) that McClain refers to as the "full-time janitor" position to which he sought restoration in May-July 2016 as an accommodation for his physical impairments. McClain had previously worked full-time at Tenax without performing pallet-wrapping functions, and he reasonably requested to return to that state of affairs in May-July 2016 because he was physically unable to perform the pallet-wrapping job. Defendant offers no evidence that McClain's requested accommodation (i.e. the janitorial-work-plus-odd-jobs full-time position McClain had worked until fall 2015)-regardless of whether labeled as a "full-time janitor" job or whatever nomenclature Owens might use-did not exist at Tenax in spring/summer 2016. Therefore, defendant cannot obtain summary judgment on the theory that plaintiff's requested accommodation did not exist.

See also Brown v. Milwaukee Board of School Directors , 855 F.3d 818, 821 (7th Cir. 2017) ("Identifying reasonable accommodations for a disabled employee requires both employer and employee to engage in a flexible, interactive process.... If a reasonable accommodation was available but the employer prevented its identification by failing to engage in the interactive process, that failure is actionable.") (citations omitted); Williamson , 834 F.Supp.2d at 1319 ("In the reasonable-accommodation context, the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.") (citations and internal quotation marks omitted).

McClain reiterates the point later in his brief by stating that he "suffered adverse employment actions of being denied accommodations, being required to work off the clock without pay and being told to quit if he would not continue in that arrangement." (Id. at 21.)

In particular, McClain directs the Court to Plaintiff's Verified Supplemental Responses (doc. 12), but that document purports to verify only that McClain worked off the clock, not that Tenax forced him to do so or even knew about it. He also refers to the parties' Joint Motion to Approve Settlement (doc. 16) of his FLSA cause of action, but nothing in that document is evidence that Tenax compelled him to work without pay.